**No. 25-3000**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

CORNER POST, INC.,

*Plaintiff-Appellee,*

v.

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,

*Defendant-Appellant,*

On Appeal from the United States District Court
for the District of North Dakota
No. 1:21-cv-00095-DMT

## APPELLEE'S OPPOSITION TO MOTION TO INTERVENE

Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S. Main Street, Ste. 5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Bryan K. Weir
Frank H. Chang
Cody Ray Milner
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd, Ste 700
Arlington, VA 22209
(703) 243-9423

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION ........................................................................................1

BACKGROUND...........................................................................................1

    A. The debit-card transaction fee standard in Regulation II....................................1

    B. Corner Post filed this suit in 2021, and the Banking Associations declined to intervene for over three years ...................................................................3

    C. The Banking Associations belatedly moved to intervene, and the district court denied intervention....................................................................................4

    D. The Banking Associations declined to appeal the denial of intervention.........5

ARGUMENT ................................................................................................6

  I. The Banking Associations' new motion to intervene is "procedural gamesmanship" and should be rejected........................................................6

  II. The Banking Associations have no right to intervene on appeal, and in any event, cannot satisfy Rule 24(a)'s intervention-as-right factors ...........................................9

    A. The Banking Associations' motion to intervene is untimely ...........................10

    B. The Board will adequately represent the Banking Associations' interests......15

  III. The Court should deny permissive intervention ...............................................19

CONCLUSION ............................................................................................21

CERTIFICATE OF COMPLIANCE..............................................................22

CERTIFICATE OF SERVICE.......................................................................22

Appellate Case: 25-3000     Page: 2     Date Filed: 11/24/2025 Entry ID: 5581584

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Minn. v. Tarek ibn Ziyad Acad.*,
   643 F.3d 1088 (8th Cir. 2011) .................................................. 11, 12

*Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*,
   88 F.4th 495 (4th Cir. 2023) ...................................................... 7, 8

*Associated Builders & Contractors, Inc. v. Herman*,
   166 F.3d 1248 (D.C. Cir. 1999) ..................................................... 20

*Cameron v. EMW Women's Surgical Center*,
   595 U.S. 267 (2022) ................................................. 8, 9, 12, 13

*Cherokee Nation Businesses v. Sanders*,
   2024 WL 5096475 (E.D. Ark. Dec. 12, 2024) ............................... 14

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
   144 S.Ct. 2440 (2024) .................................................................... 4

*Craig v. Simon*,
   980 F.3d 614 (8th Cir. 2020) ......................................................... 9

*Curry v. Regents of Univ. of Minn.*,
   167 F.3d 420 (8th Cir. 1999) ........................................... 7, 16, 20

*Davis v. Bay Reg'l Med. Ctr.*,
   2020 WL 1311116 (E.D. Mich. Mar. 30, 2020) ........................... 20

*Entergy Ark., LLC v. Thomas*,
   76 F.4th 1069 (8th Cir. 2023) ......................................... 15, 16, 18

*FTC v. Johnson*,
   800 F.3d 448 (8th Cir. 2015) ....................................................... 18

*Hutchinson v. Pfeil*,
   211 F.3d 515 (10th Cir. 2000) ....................................................... 8

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   849 F.3d 761 (8th Cir. 2017) ............................................ 7, 10, 12, 14

*Jenkins ex rel. Jenkins v. Missouri*,
   78 F.3d 1270 (8th Cir. 1996) ....................................................... 18

*Louisiana v. Burgum*,
   132 F.4th 918 (5th Cir. 2025) ..................................................... 16

*Me. Republican Party v. Dunlap*,
   2018 WL 2248583 (D. Me. May 16, 2018) .................................. 19

Appellate Case: 25-3000     Page: 3     Date Filed: 11/24/2025 Entry ID: 5581584

*Minn. Milk Producers Ass'n v. Glickman,*
    153 F.3d 632 (8th Cir. 1998) ........................................................ 10

*N.D. Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.,*
    55 F.4th 634 (8th Cir. 2022) ........................................................ 4

*NACS v. Bd. of Governors of Fed. Rrsv. Sys.,*
    746 F.3d 474 (D.C. Cir. 2014) ..................................................... 3

*NACS v. Bd. of Governors of Fed. Rrsv. Sys.,*
    958 F. Supp. 2d 85 (D.D.C. 2013) ............................................... 3

*Nat'l Parks Conservation Ass'n v. EPA,*
    759 F.3d 969 (8th Cir. 2014) ........................................................ 18

*North Dakota ex rel. Stenehjem v. United States,*
    787 F.3d 918 (8th Cir. 2015) ........................................................ 16

*Pub. Serv. Co. of New Mexico v. Barboan,*
    857 F.3d 1101 (10th Cir. 2017) .................................................... 9

*Richardson v. Flores,*
    979 F.3d 1102 (5th Cir. 2020) .............................................. 8, 9, 20

*Standard Heating & Air Conditioning Co. v. City of Minneapolis,*
    137 F.3d 567 (8th Cir. 1998) ................................................. 17, 18

*Tri-State Generation & Transmission Ass'n. v. New Mexico Pub. Regul. Comm'n,*
    787 F.3d 1068 (10th Cir. 2015) .................................................... 16

*United States v. Metro. St. Louis Sewer Dist.,*
    569 F.3d 829 (8th Cir. 2009) ........................................................ 7

*United States v. Ritchie Special Credit Invs., Ltd.,*
    620 F.3d 824 (8th Cir. 2010) ............................................. 10, 12, 13

*Weltner v. Raffensperger,*
    2020 WL 8116172 (N.D. Ga. June 26, 2020) ......................... 14, 19

**Statutes**

15 U.S.C. §1693o-2 ........................................................................... 2

**Other Authorities**

7C Wright & Miller, *Fed. Prac. & Proc. Civ.* §1916 ...................... 7, 8

Appellate Case: 25-3000     Page: 4     Date Filed: 11/24/2025 Entry ID: 5581584

# INTRODUCTION

For over three years, the Banking Associations watched this case from the sidelines. Only after the case went all the way to the Supreme Court and returned did the Banking Associations belatedly seek to intervene in the district court. The district court rejected that attempted intervention as untimely, unnecessary, and unfairly disruptive to the parties. The Banking Associations chose not to appeal the district court's decision denying their motion to intervene.

Now, nine months later, the Banking Associations move to intervene on appeal. But intervention on appeal is reserved for truly exceptional cases—not cases where unsuccessful intervenors seek to evade an adverse district-court intervention ruling and skirt an unfavorable standard of review. The Banking Associations' motion to intervene is again untimely. The Board remains competent to represent the Banking Associations' interests. And the Banking Associations' participation would add only expense and inconvenience to this appeal. The Court should deny intervention and let the Banking Associations present their arguments as they did below, as amici curiae.

# BACKGROUND

## A. The debit-card transaction fee standard in Regulation II.

In 2010, Congress passed the "Durbin Amendment" as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act. *See* Am. Compl. (Doc. 19) ¶¶9, 40. The Durbin Amendment instructed the Board to prescribe regulations setting the allowable amount of debit-card transaction fees. 15 U.S.C. §1693o-2(a)(3)(A). To

1

constrain the Board's rulemaking, Congress directed the Board to "distinguish between" two categories of costs. *Id.* §1693o-2(a)(4)(B). Costs in the first category— "incremental cost[s] incurred by the [bank] for the role of the [bank] … in the authorization, clearance, or settlement of a particular electronic debit transaction"— "shall be considered." *Id.* §1693o-2(a)(4)(B)(i). But "other costs incurred by [a bank] which are not specific to a particular electronic debit transaction … shall not be considered." *Id.* §1693o-2(a)(4)(B)(ii).

In July 2011, the Board issued Regulation II, which sets the maximum allowable per-transaction interchange fee at 21 cents plus an additional 0.05% ad valorem per swipe to cover fraud losses. 76 Fed. Reg. 43,394, 43,422 (July 20, 2011). Despite Congress's directive that the Board "shall" consider incremental ACS costs but "shall not" consider other costs, 15 U.S.C. §1693o-2(a)(4)(B)(i)-(ii), the Board based Regulation II on a unwritten *third* category of costs—costs the Board described as those "that are not encompassed in either the set of costs the Board must consider under [§1693o-2(a)(4)(B)(i)], or the set of costs the Board may not consider under [§1693o-2(a)(4)(B)(ii)]." 76 Fed. Reg. at 43,426. The Board included in that third category of costs (1) fixed ACS costs, (2) network-processing fees, (3) transaction-monitoring costs, and (4) fraud losses. *Id.* at 43,426, 43,429-31; Am. Compl. ¶55. Having included and considered this third category of costs, the Board's final 21-cent fee cap was a marked increase from the 12-cent fee cap in its proposed rule. *See* Am. Compl. ¶¶48-49.

Soon after Regulation II became final, a group of merchants challenged it in the U.S. District Court for the District of Columbia. That court determined that Regulation II "clearly disregarded Congress's statutory intent by inappropriately inflating all debit card transaction fees by billions of dollars." *NACS v. Bd. of Governors of Fed. Rrsv. Sys.*, 958 F. Supp. 2d 85, 86-87 (D.D.C. 2013). The D.C. Circuit, applying the now-defunct doctrine of *Chevron* deference to administrative agencies' acts of statutory interpretation, reversed. *See NACS v. Bd. of Governors of Fed. Rrsv. Sys.*, 746 F.3d 474 (D.C. Cir. 2014). The Board later issued an updated rule providing further explanation relating to transaction-monitoring costs. 80 Fed. Reg. 48,684 (Aug. 14, 2015). The Updated Rule doubled down on the "[t]he same rationale" the Board deployed in Regulation II. *Id.* at 48,685.

**B.    Corner Post filed this suit in 2021, and the Banking Associations declined to intervene for over three years.**

In April 2021, the North Dakota Retail Association and North Dakota Petroleum Marketers Association filed this APA suit on behalf of their members to challenge the lawfulness of Regulation II. *See generally* Compl. (Doc. 1). In July 2021, Corner Post formally joined as a named party through an amended complaint. *See* Am. Compl. ¶19. Corner Post alleged that the debit-card fee standard imposed by Regulation II (and the Updated Rule) exceeds the Board's statutory authority under the Durbin Amendment, and also is arbitrary and capricious. *Id.* ¶¶84-94.

Appellate Case: 25-3000    Page: 7    Date Filed: 11/24/2025 Entry ID: 5581584

In 2021, the Board moved to dismiss Corner Post's suit on statute-of-limitations grounds. The district court granted that motion and this Court affirmed. *N.D. Retail Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.*, 55 F.4th 634 (8th Cir. 2022). But on July 1, 2024, the U.S. Supreme Court found that Corner Post's suit was timely under 28 U.S.C. § 2401(a) and reversed that dismissal. *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S.Ct. 2440 (2024). The Supreme Court then remanded this case for litigation on the merits of Corner Post's challenge. At no point in the first three years of litigation did the Banking Associations seek to intervene in the case.

On August 22, 2024, the district scheduled a status conference for September 20, 2024, "to chart a course going forward." Status Conference Order (Doc. 38). Later, Corner Post and the Board submitted a joint motion for a scheduling order. *See* Jt. Mot. for Sched. Order (Doc. 39) at 2. On September 20, 2024, the district court entered a scheduling order for the filing of cross-motions for summary judgment in this case. *See* Sched. Order (Doc. 41). At no point during this time did the Banking Associations seek to intervene.

## C. The Banking Associations belatedly moved to intervene, and the district court denied intervention.

The Banking Associations finally moved to intervene in the district court on October 16, 2024—over three-and-a-half years after this case was first filed, and over two months since the case had returned to the district court for litigation on the merits.

Appellate Case: 25-3000     Page: 8     Date Filed: 11/24/2025 Entry ID: 5581584

The Banking Associations sought intervention of right under Rule 24(a) and permissive intervention. *See* Mem. Supporting Intervention (Doc. 45-1) at 2.

The district court concluded that the Banking Associations were not entitled to intervene of right and denied their motion for permissive intervention. *See* Order (Doc. 64). In doing so, the district court made three key rulings. **First**, the district court determined that the Banking Associations' motion to intervene was untimely and that they had not adequately explained their delay in seeking intervention. *Id.* at 6-9. **Second**, the district court determined that the Banking Associations had failed to rebut the presumption of adequate representation or otherwise show that the Board was incapable of representing their interests. *Id.* at 9-11. **Third**, the district court determined that permissive intervention was inappropriate since intervention would only disrupt and delay resolving the case. *Id.* at 11-12.

## D. The Banking Associations declined to appeal the denial of intervention.

After the district court denied the Banking Associations' motion to intervene, the Banking Associations could have pursued an immediate appeal in this Court. They chose not to. Instead, they accepted the district court's denial of intervention, allowed the deadline for any appeal to expire, and participated in the proceedings below as amici curiae. *See* Amicus Brief of Banking Associations (Doc. 65).

The district court granted Corner Post's motion for summary judgment, vacating the debit-card fee portion of Regulation II. *See* Amended Judgment (Doc. 87). The

5

Board appealed. Now, the Banking Associations have filed a new motion seeking to intervene on appeal.

## ARGUMENT

This Court should deny the Banking Associations' motion to intervene in this appeal. The Banking Associations tried to intervene before the district court, lost, and chose not to appeal that ruling to this Court. Given that history, asking this Court for leave to intervene on appeal is an act of procedural gamesmanship, and this Court should firmly reject it for that reason. In any event, as the district court has already determined, the Banking Associations' arguments for intervention fail on all points: They are untimely twice over, they do not establish that the Board is unable to protect the Banking Associations' interests, and the additional expense and inconvenience added by introducing the Banking Associations as parties at this late stage forecloses permissive intervention.

There is nothing to stop the Banking Associations from presenting their arguments in an amicus brief—as they did in the district court. This Court should reject this recycled second attempt at belated intervention.

## I.    The Banking Associations' new motion to intervene is "procedural gamesmanship" and should be rejected.

By declining to appeal the district court's denial of intervention and filing a new motion to intervene on appeal, the Banking Associations seek to sidestep the ordinary standards of review. The Court should reject this overt procedural gamesmanship.

6

As the Banking Associations' own cited cases acknowledge, "those seeking to force their way into lawsuits between others generally must do so while the case is pending before a trial court rather than waiting to do so on appeal." *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*, 88 F.4th 495, 499 (4th Cir. 2023); *see also* 7C Wright & Miller, *Fed. Prac. & Proc. Civ.* §1916. The Banking Associations sought to intervene below. And they lost on every argument they made—timeliness, intervention of right, and permissive intervention. If the Banking Associations still thought that their participation in this lawsuit was necessary, they could have immediately appealed that denial of intervention, since the "denial of a motion to intervene of right is immediately appealable as a final judgement." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 833 (8th Cir. 2009). But, if they had appealed the denial of intervention, that ruling would have been reviewed only for an abuse of discretion. *See In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 766 (8th Cir. 2017) ("[A] district court's ruling on the timeliness of a motion to intervene is reviewed for abuse of discretion."); *Curry v. Regents of Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999) (this Court "review[s] the denial of permissive intervention for abuse of discretion").

So, instead of appealing the denial of intervention, the Banking Associations sat on their hands and waited nine more months. Now, they again seek intervention, implying that this constitutes a new, independent attempt at intervention and asking for the same intervention standards that apply in district court. As other courts have recognized, this is nothing more than "procedural gamesmanship" to "skirt unfavorable

7

standards of review." *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020). The district court's ruling that the Banking Associations' motion to intervene was untimely *would* have been reviewed for abuse of discretion—if the Banking Association had appealed. And the district court's denial of permissive intervention *would* have been reviewed for abuse of discretion—if the Banking Association had appealed.

This Court should, like its sister circuits, "police against attempts to evade that deferential standard by declining to seek review of an adverse district court decision and then filing a fresh motion to intervene on appeal." *Ass'n for Educ. Fairness*, 88 F.4th at 499; *see also Hutchinson v. Pfeil*, 211 F.3d 515, 519 (10th Cir. 2000) (rejecting a "mo[tion] to intervene on appeal" since it was "in effect, an attempt to obtain appellate review lost by her failure to timely appeal the denial of her motion to intervene in district court"). There "must be a steep threshold for allowing intervention on appeal." *Richardson*, 979 F.3d at 1105, such as when a case present the "unique situation[]" of any intervenor seeking to "prosecute an appeal that the existing party has determined not to take," Wright & Miller §1916, or where "the necessity of intervention did not arrive until after judgement had been entered," *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1257 (D.C. Cir. 1999).

No such unique circumstances are present here. Unlike *Cameron v. EMW Women's Surgical Center*, this is not a case where the existing government party chose not to pursue an appeal, justifying a third party's intervention on appeal. 595 U.S. 267, 271 (2022). The Board has already filed its appeal in this case. The Banking Associations' motion

8

to intervene is simply "procedural gamesmanship," and this Court should deny the motion for that reason.

## II. The Banking Associations have no right to intervene on appeal, and in any event, cannot satisfy Rule 24(a)'s intervention-as-right factors.

When a case reaches appeal, there is no "rule allowing intervention," and intervention on appeal is warranted only in "truly exceptional cases." *Richardson*, 979 F.3d at 1104. As this Court and others have established, "intervention on appeal should be allowed only in an exceptional case [and] for imperative reasons." *Craig v. Simon*, 980 F.3d 614, 618 n.3 (8th Cir. 2020) (cleaned up); *see also Richardson*, 979 F.3d at 1104; *Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017). Thus, when intervention is sought for the first time on appeal, the ultimate decision is still one of permissive intervention, even if intervention-of-right factors are considered. *See Cameron*, 595 U.S. at 278-79; *see also Richardson*, 979 F.3d at 1103.

The Banking Associations are wrong to imply that they have a right to intervene on appeal if they satisfy the intervention factors set out in Federal Rule of Civil Procedure 24(a). Those factors govern intervention only in district-court litigation, and they have no analog in the Federal Rules of Appellate Procedure. At most, those Rule 24(a) factors guide appellate courts' discretion in granting permissive intervention on appeal. And even setting that point aside, the Banking Associations cannot satisfy the Rule 24(a) factors. Their motion to intervene is untimely twice over, and they cannot show that the Board is unable to represent their interests.

Appellate Case: 25-3000     Page: 13     Date Filed: 11/24/2025 Entry ID: 5581584

## A. The Banking Associations' motion to intervene is untimely.

The Banking Associations' motion to intervene on appeal is far too late to be "timely." The district court already determined that the Banking Associations' first motion to intervene was untimely, *see* Order (Doc. 64) at 6-9—a decision that (if it were before this Court) would be reviewable only for an abuse of discretion, *Wholesale Grocery*, 849 F.3d at 766. Now, nine months later, the Banking Associations' position has only worsened. They seek to intervene over four-and-a-half years after the suit began and after eighteen months of litigation on the merits have already taken place. And they offer no compelling reason either for their initial delay in seeking to intervene or for their failure to appeal from the district court's decision denying their motion to intervene.

"[W]hether a motion to intervene is timely is determined by considering all the circumstances of the case." *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) (citation omitted). Specifically, this Court considers (1) "how far the litigation had progressed at the time of the motion for intervention," (2) "the prospective intervenor's prior knowledge of the pending action," (3) "the reason for the delay in seeking intervention," and (4) "the likelihood of prejudice to the parties in the action." *Id.* (quoting *Minn. Milk Producers Ass'n v. Glickman*, 153 F.3d 632, 646 (8th Cir. 1998). This Court has held that a court may find a motion untimely based on just some—and not all—of the factors. *See ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d

10

1088, 1094 (8th Cir. 2011). But in any event, all four factors here show that the Banking Associations' motion is untimely.

*First* and *second*, this litigation has already progressed substantially, and the Banking Associations knew of this litigation since day one.

This case was first filed in April 2021, over four and a half years ago. Since then, it has gone through two rounds of dispositive briefing, arguments before this Court, and an appeal to and remand from the Supreme Court for litigation on the merits. Even after remand from the Supreme Court, the merits adjudication of this case has been ongoing since August 2024, when the district court entered a summary-judgment briefing schedule. The Banking Associations conceded below that they "have been aware" of this case since day one. *See* Mem. Supporting Intervention (Doc. 45-1) at 11. Yet the Banking Associations never sought to intervene for the first three years of the litigation.

Even after the case was remanded by the Supreme Court for continued litigation on the merits, the Banking Associations waited for over two months before filing their first motion to intervene—a motion that the district court determined was inexcusably untimely. And even if this Court ignores the Banking Associations' untimely motion to intervene in the district court, the fact remains that the Banking Associations have waited over eighteen months since the Supreme Court remanded this case for litigation on the exact questions presented in this appeal to seek leave to intervene. This Court is "free to conclude" untimeliness based on the Banking Associations' "knowledge" of,

and inaction in the face of, this suit. *ACLU of Minn.*, 643 F.3d at 1095. At the very least, this factor weighs heavily against the timeliness of the Banking Associations' motion. *See, e.g.*, *Ritchie*, 620 F.3d at 833.

The Banking Associations now claim that their motion is timely because "this appeal" has not yet "progressed." Mot. to Intervene, at 17. But the question for timeliness is "how far the *litigation* had progressed at the time of the motion for intervention," not how far any particular phase of litigation has progressed. *Ritchie*, 620 F.3d at 832 (emphasis added). The intervention clock does not reset at each new stage of litigation. The cases cited by the Banking Association are not to the contrary. In *Cameron*, intervention on appeal was granted only because the named party chose not to prosecute the appeal, *see* 595 U.S. at 271, a "unique circumstance" that is not presented here. And in *Wholesale Grocery*, this Court agreed that intervenors should "seek intervention within thirty days of" learning about the need to intervene, and affirmed a denial of intervention where the intervenor "was in fact aware of this litigation before it attempted to intervene" but delayed for over a year. 849 F.3d at 764, 767.

Here, the Banking Associations sat on their hands and watched this litigation play out for three years before filing an untimely motion to intervene in the district court. Then, after the district court denied intervention, they opted not to appeal that decision and instead sat on their hands for nine more months. Thus, this litigation has already progressed substantially with their knowledge and without their participation.

12

***Third***, the Banking Associations have no compelling reason to justify their years-long delay. The Banking Associations contend that there was no need for them to intervene for the first three years of this case's life while the procedural litigation unfolded, and that the "need to seek intervention did not arise until" the Supreme Court remanded this case in July 2024. Mot. to Intervene, at 18 (quoting *Cameron*, 595 U.S. at 280). This explanation fails.

For one thing, Corner Post's Complaint explained then that Corner Post's suit was timely (as later confirmed by the Supreme Court's decision). *See* Am. Compl. ¶¶27-32 (explaining why the suit was not barred by the statute of limitations). So as early as 2021, the Banking Associations should have known that merits litigation was foreseeable. And, in any event, if the Banking Associations' interests were as important as they claim, that should have motivated the Banking Associations to intervene at the earliest opportunity and defend Regulation II on all grounds. Yet they chose to do nothing. That should end the inquiry whether the present motion is timely. *See Ritchie*, 620 F.3d at 833 ("When a party had knowledge of all the facts … and failed to raise the issue when first presented with an opportunity to do so, subsequent intervention is untimely.").

Next, even assuming that it might have been "reasonable" to wait until after the Supreme Court had already weighed in on this litigation and the case had returned to the district court on remand, that does nothing to explain the Banking Associations' *further* delays. The Banking Associations did not move to intervene when the case was

13

remanded, or when the district court set a scheduling conference, or even when the district court set a briefing schedule. As the district court already noted, that adds up to over two months of unexplained delay. *See* Order (Doc. 64) at 9 (the Banking Associations' asserted explanation for delay "does not explain why they waited in excess of two months following remand to file their motion to intervene"). Nor is there any explanation for why they chose not to appeal the denial of intervention. If, as the Banking Associations assert, the "need to seek intervention" arose when it became clear that the litigation would reach the merits of Corner Post's arguments, they have not "adequately explain[ed] why [they] thought [their] interests were protected from" August 2024 to now. *Wholesale Grocery*, 849 F.3d at 768. The Banking Associations now offers no good reason for that particular delay.

**Fourth**, the Bank Associations' belated intervention will prejudice the parties and this Court. Intervention now will, at a minimum, result in additional briefs that either duplicate the Board's arguments or raise new issues that were not considered below and thus are not properly presented in the current appeal. "[A]dditional filings" always have a tendency to "prejudice" existing parties "by complicating and protracting the litigation." *Weltner v. Raffensperger*, 2020 WL 8116172, at *7 (N.D. Ga. June 26, 2020). The current parties are well equipped to litigate the current appeal, and adding more parties and briefs will only "risk[] gumming up the works" and further "divert[] focus from the merits." *Cherokee Nation Businesses v. Sanders*, 2024 WL 5096475, at *2 (E.D. Ark. Dec. 12, 2024).

Because all four factors weigh against the Banking Associations—and because the district court has already found their intervention to be untimely—this Court should find that their motion to intervene is untimely.

## B.  The Board will adequately represent the Banking Associations' interests.

The Banking Associations have not shown that the Board inadequately represents their interests. The district court has already determined that the Banking Associations failed to rebut the strong presumption that the government will adequately litigate this case; thus, the Banking Associations did not meet their burden "of showing that the Board will inadequately represent their interests." Order (Doc. 64) at 10. This Court should find the same.

Contrary to the Banking Associations' suggestion, this is not a case where they need only make a "minimal showing that representation 'may be' inadequate" to justify intervention. Mot. to Intervene, at 22. In this Court—and in every other federal court of appeals—when "a proposed intervenor's asserted interest is one that a governmental entity who is a party to the case is charged with protecting," this Court "presume[s] that the government's representation is adequate." *Entergy Ark., LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023) (affirming denial of intervention). This presumption of adequacy can be overcome "only by 'a strong showing of inadequate representation.'" *Id.* at 1072. That showing is met only in extraordinary circumstances involving government "'misfeasance or nonfeasance,'" *North Dakota ex rel. Stenehjem v. United States*,

15

787 F.3d 918, 922 (8th Cir. 2015); an "adversity of interest" or "collusion" among the parties, *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013); or the existence of interests that "cannot be subsumed within the public interest represented by the government entity," *Curry*, 167 F.3d at 423.

The presumption of adequate representation attaches with full force here. The Board is an agency of the United States charged by law with defending the regulations at issue, which "subsumes the interest[s]" of the Banking Associations such that "[t]he presumption of adequate representation applies." *Stenehjem*, 787 F.3d at 922. In addition, even if the Board and the Banking Associations may have slightly different motivations, they share the same "ultimate objective"—keeping Regulation II in effect. *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025); *see also Tri-State Generation & Transmission Ass'n. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1072-73 (10th Cir. 2015) ("[E]ven though a party seeking intervention may have different 'ultimate motivation[s]' from the governmental agency, where its objectives are the same, we presume representation is adequate."). The Board filed this appeal in order to uphold Regulation II and its 21-cent fee cap. And, as the Banking Associations themselves admit, they "seek the same result." Mot. to Intervene, at 23. Because the Banking Associations' interests in defending Regulation II "align[] squarely" with the Board's interest in doing so, the Banking Associations cannot overcome the presumption of adequacy. *Entergy Ark.*, 76 F.4th at 1072.

16

To try to escape the presumption of adequacy, the Banking Associations try two different arguments. Neither works.

**First**, the Banking Associations claim that they have distinct "financial interest[s]" that will be harmed, and that this alone is enough to justify intervention. Mot. to Intervene, at 22. But this Court has repeatedly held that this sort of distinct interest is still subsumed by government representation. In *Standard Heating & Air Conditioning Co. v. City of Minneapolis*, several trade associations sought to intervene and defend municipal ordinances on testing and licensing, claiming that they faced "increased costs from injuries" that would be "different from the costs to the general public" if the ordinances were removed. 137 F.3d 567, 569, 572 (8th Cir. 1998). This Court acknowledged that this was a more particularized cost than would be carried by the general public, but still ruled that "[t]hese potential costs are insufficient to overcome [the] presumption" because "costs arising from on the job injury are the type of costs the government seeks to reduce with its regulatory system." *Id.* at 572. And in any event, these "increased costs to the associations present no possibility of divergence between their position and that of the [government] because both take the same position in the litigation." *Id.* (cleaned up). The same is true here. The Banking Associations' "financial interest" in recovering costs through debit-card transaction fees are the exact "type of costs" the Board sought to account for by setting Regulation II's transaction-fee cap at 21 cents. And, once again, both the Board and the Banking

Associations "take the same position in litigation"—i.e., arguing that the 21-cent cap should continue to exist.

Even the cases cited by Banking Associations cut against their position. In *Entergy Arkansas v. Thomas*, this Court ruled that proposed intervenors *failed* to rebut the presumption of adequate representation—noting again that "the costs that would-be intervenors stood to incur were the same 'type of costs' that the government aimed to reduce by defending its regulation." 76 F.4th at 1072 (quoting *Standard Heating*, 137 F.3d at 572). Conversely, in *National Parks Conservation Association v. EPA*, intervention was permitted because the intervening power plant had a financial interest against being forced "to purchase and install emission-control technology" that "diverge[d]" from "the EPA's general interests in assuring that the proper regulatory procedures are followed." 759 F.3d 969, 976-77 (8th Cir. 2014). That is *not* true here, where both the Board and the Banking Associations share an interest in defending the existing transaction-fee rate to allow banks to recover their transaction costs.

**Second**, the Banking Associations claim an interest in making *different* statutory arguments, which supposedly justifies intervention. *See* Mot. to Intervene, at 23-24. But as this Court has said time and again, "difference of opinion concerning litigation strategy ... does not overcome the presumption of adequate representation." *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015) (quoting *Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996)). The Banking Associations are free to make their

alternative statutory arguments in an amicus brief. But their belief that certain statutory arguments are better than others provides no basis for intervention.

## III.  The Court should deny permissive intervention.

As Corner Post explained, there is no right to intervene on appeal and all interventions on appeal are permissive interventions. *Supra* 9. The Banking Associations' argument in favor of permissive intervention fails for four reasons:

***First***, the district court denied permissive intervention while this case was pending below. That decision would have been reviewed only for "abuse of discretion" if the Banking Associations had properly appealed rather than engaging in procedural gamesmanship. *Curry*, 167 F.3d at 422. The Banking Associations have made no attempt to show that the district court abused its discretion, and they should not be allowed to circumvent normal appellate rules by seeking permissive intervention de novo here.

***Second***, as Corner Post explained, the Banking Associations' motion to intervene on appeal is untimely twice over. *Supra* 10-14.

***Third***, when the government provides "adequate representation," the "case for permissive intervention diminishes, or disappears entirely." *Me. Republican Party v. Dunlap*, 2018 WL 2248583, at *2 (D. Me. May 16, 2018); *accord Weltner*, 2020 WL 8116172, at *7. As Corner Post explained, the Banking Associations' interests are adequately represented by the Board's prosecution of this appeal. *Supra* 15-18.

***Fourth***, the Banking Associations' belated intervention will unnecessarily prejudice the parties and this Court. *Supra* at 14-15. Adding another set of appellate

briefs and additional oral argument on the same issues and same basic statutory arguments will only increase the time and expense incurred by all other parties and by this Court. Such increase in "expense and inconvenience" weighs against permissive intervention. *Davis v. Bay Reg'l Med. Ctr.*, 2020 WL 13111164, at *3 (E.D. Mich. Mar. 30, 2020). This added "expense and inconvenience" is made worse by the fact that the Banking Associations' statutory arguments are either perfectly identical to the Board's arguments, or else would "interject collateral issues," *Curry*, 167 F.3d at 423, such as arguing that Regulation II should be replaced with a *higher* fee standard, *see* Mot. to Intervene, at 23.

*Fifth*, the Banking Associations can raise whatever arguments they would like in an amicus brief. This is the customary approach followed by courts around the country. *Richardson*, 979 F.3d at 1106 ("To the extent Movants want their voices heard, however, the proper procedure is to move to appear as *amici curiae*, not to move to intervene."); *see also Stuart*, 706 F.3d at 355 (affirming denial of permissive intervention and noting that third parties "retain the ability to present their views in ... amicus briefs"); *Associated Builders & Contractors, Inc. v. Herman*, 166 F.3d 1248, 1254 (D.C. Cir. 1999). The Banking Associations suffered no prejudice in the district court on account of the denial of their motion to intervene; they were able to fully present their arguments to the district court in an amicus brief. They can do so again here.

## CONCLUSION

The Court should deny the Banking Association's motion to intervene on appeal and allow them to serve as amici instead, as they did in the district court below.

Dated: November 24, 2025

Respectfully submitted,

/s/ Tyler R. Green
Tyler R. Green
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-6723
tyler@consovoymccarthy.com

Bryan K. Weir
Frank H. Chang
Cody Ray Milner
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd, Ste. 700
Arlington, VA 22209

*Counsel for Plaintiff-Appellee*

21

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the portions of the document that are exempted by rule, this document contains 5,126 words. I further certify that this document complies with the typeface and type-style requires of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14-point Garamond font.

Dated: November 24, 2025 _/s/ Tyler R. Green_
Tyler R. Green

## CERTIFICATE OF SERVICE

I certify that on November 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve a copy on all counsel of record.

Dated: November 24, 2025 _/s/ Tyler R. Green_
Tyler R. Green

Appellate Case: 25-3000     Page: 26     Date Filed: 11/24/2025 Entry ID: 5581584