# United States Court of Appeals
*for the*
# Eighth Circuit

Case No. 25-3000

CORNER POST, INC.,

*Plaintiff-Appellee,*

– v. –

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,

*Defendant-Appellant.*

ON APPEAL FROM AN ORDER ENTERED U.S. DISTRICT COURT FOR THE DISTRICT OF NORTH DAKOTA – WESTERN IN CASE NO. 1:21-CV-00095-DMT, DANIEL MACK TRAYNOR, DISTRICT JUDGE

**BRIEF OF *AMICI CURIAE* ADVANCING AMERICAN FREEDOM; FRONTLINE POLICY COUNCIL; CHARLIE GEROW; JAY D. HOMNICK, SENIOR FELLOW, PROJECT SENTINEL; JENNY BETH MARTIN, HONORARY CHAIRMAN, TEA PARTY PATRIOTS ACTION; MEN AND WOMEN FOR A REPRESENTATIVE DEMOCRACY IN AMERICA, INC.; NATIONAL CENTER FOR PUBLIC POLICY RESEARCH; NEW YORK STATE CONSERVATIVE PARTY; PRO-LIFE WISCONSIN; RIO GRANDE FOUNDATION; TAXPAYERS PROTECTION ALLIANCE; TEA PARTY EXPRESS; AND WOMEN FOR DEMOCRACY IN AMERICA, INC. IN SUPPORT OF DEFENDANT-APPELLANT AND REVERSAL**

J. MARC WHEAT, ESQ.
TIMOTHY HARPER, ESQ. (ADMITTED IN DC)
ADVANCING AMERICAN FREEDOM
*Attorneys for Amicus Curiae*
801 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 780-4848
mwheat@advancingamericanfreedom.com

COUNSEL PRESS   (800) 4-APPEAL • (131776)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF INTEREST OF AMICI CURIAE ................................................. 1

INTRODUCTION .............................................................................................. 2

ARGUMENT ..................................................................................................... 4

    I.    The Court Below Was Wrong and the District Court in *Linney's Pizza* Was Right: The Durbin Amendment Allows the Federal Reserve to Consider the Third Category of Costs .............. 4

    II.   The Current Regulatory Cap on Interchange Fees is not in Excess of the "Reasonable and Proportional" Directive to the Board by Congress ......................................................................... 9

          A.    The current cap already prevents fees from being greater than a level "reasonable and proportional to the cost incurred" ........................................................................ 9

          B.    Competitive market forces already maintain downward pressure on fees. Lowering the cap will harm consumers .......................................................................... 10

CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
    1:21-cv-00095-DMT-CRH (D.N.D. August 6, 2025)............................ 3, 7-8

*Linney's Pizza v. Bd. of Governors of the Fed. Rsrv. Sys.*,
    No. 3:22-cv-00071-GFVT (E.D. Ky. Sept. 15, 2025)..........................3, 4, 7, 8

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024)................................................................ 3, 4, 5

*Marbury v. Madison*,
    5 U.S. 132 (1803)..................................................................................2

*NACS v. Bd. of Governors of the Fed. Rsrv. Sys.*,
    746 F.3d 474 (D.C. Cir. 2014) ........................................................4, 7

**Statutes & Other Authorities:**

15 U.S.C. § 1693o-2........................................................................................4

15 U.S.C. § 1693o-2(a)(2) ........................................................................ 5, 8, 9

15 U.S.C. § 1693o-2(a)(3)(A).........................................................................3, 4

15 U.S.C. § 1693o-2(a)(4)(B)............................................................................6

15 U.S.C. § 1693o-2(a)(4)(B)(i) ................................................................ 5, 6, 7, 8

15 U.S.C. § 1693o-2(a)(4)(B)(ii) ....................................................................7, 8

12 C.F.R. §§ 235.1– 235.10 .............................................................................2

76 Fed. Reg. 43,394 (July 20, 2011)..................................................................2

Antonin Scalia, Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 161 (2012) ........................................................................8

Antonin Scalia, *Foreword: The Importance of Structure in Constitutional Interpretation*, 83:4 Notre Dame L. Rev. 1417, 1418 (2008) ........................2

Edwin J. Feulner, Jr., *Conservatives Stalk the House: The Story of the Republican Study Committee* (Green Hill Publishers, Inc. 1983) ....................1

Federal Reserve Board, 2019 Interchange Fee Revenue, Covered Issuer Costs, and Covered Issuer and Merchant Fraud Losses Related to Debit Card Transactions (2021) ............................................................9, 10

U.S. Bureau of Labor Statistics, Consumer Price Index for All Urban Consumers: All Items in U.S. City Average [CPIAUCSL], retrieved from FRED, Federal Reserve Bank of St. Louis ............................................10

# STATEMENT OF INTEREST OF AMICI CURIAE[1]

Advancing American Freedom (AAF) is a nonprofit organization that promotes and defends the timeless, self-evident truths conservatives have always championed—individual liberty, personal responsibility, limited government, and the rule of law[2]—even as many abandon those principles out of political expedience. AAF remains an anchor to windward and "will continue to serve as a beacon for conservative ideas, a reminder to all branches of government of their responsibilities to the nation."[3] AAF stands for the Founders' vision of individual liberty secured by a limited government of separated powers, the guarantor of our Republic's enduring stability, and believes that originalism and textualism are essential tools for the preservation of constitutional order. AAF files this brief on behalf of its 13,811 members in the Eighth Circuit and 140,157 members nationwide.

Amici Frontline Policy Council; Charlie Gerow; Jay D. Homnick, Senior Fellow, Project Sentinel; Jenny Beth Martin, Honorary Chairman, Tea Party Patriots

---

[1] All parties have consented to the filing of this amicus brief. No counsel for a party authored this brief in whole or in part. No person other than Amicus Curiae and its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

[2] *Independence Index: Measuring Life, Liberty and the Pursuit of Happiness*, Advancing American Freedom available at https://advancingamericanfreedom.com/aaff-independence-index/.

[3] Edwin J. Feulner, Jr., *Conservatives Stalk the House: The Story of the Republican Study Committee*, 212 (Green Hill Publishers, Inc. 1983).

Appellate Case: 25-3000    Page: 5    Date Filed: 12/30/2025 Entry ID: 5592374

Action; Men and Women for a Representative Democracy in America, Inc.; National Center for Public Policy Research; New York State Conservative Party; Pro-Life Wisconsin; Rio Grande Foundation; Taxpayers Protection Alliance; Tea Party Express; and Women for Democracy in America, Inc. believe that the courts' role as interpreters is crucial to American liberty.

## INTRODUCTION

"It is emphatically the province and duty of the Judicial Department to say what the law is." *Marbury v. Madison*, 5 U.S. 132, 177 (1803). In exercising that power, the tools of originalism and textualism are critical to the prevention of judges legislating from the bench and thereby to the continued integrity of the separation of powers enshrined in the Constitution which, in turn, keeps Americans free. As Justice Scalia once wrote, "Structure is everything."[4]

At issue in this case is the interpretation of the Debit Card Interchange Fees and Routing regulation known as Regulation II. 76 Fed. Reg. 43,394, 43,397 (July 20, 2011) (codified at 12 C.F.R. §§ 235.1– 235.10). Regulation II sets a cap of 21 cents plus 0.05% *ad valorem* for interchange fees charged when a customer swipes a debit card.

---

[4] Antonin Scalia, *Foreword: The Importance of Structure in Constitutional Interpretation*, 83:4 Notre Dame L. Rev. 1417, 1418 (2008).

Regulation II implements the Durbin Amendment, an amendment to the 2010 Dodd-Frank Wall Street Reform and Consumer Protection Act. The Durbin Amendment directs the Federal Reserve Board of Governors to regulate debit card interchange fees, setting a cap so that the fees are "reasonable and proportional to the cost incurred by the issuer with respect to the transaction." 15 U.S.C. § 1693o-2(a)(3)(A). The Durbin Amendment directs the Board to consider a number of factors. Corner Post challenges Regulation II, arguing that the Board impermissibly considered certain costs to the networks and thus imposed a too-permissive fee cap. The district court below agreed, and vacated Regulation II, though it stayed its vacatur pending appeal to this Court. *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 1:21-cv-00095-DMT-CRH at 44 (D.N.D. August 6, 2025).

*Linney's Pizza v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 3:22-cv-00071-GFVT (E.D. Ky. Sept. 15, 2025) raises the same issue. There, the district court found in favor of the Board and its interpretation of the Durbin Amendment despite the statute's ambiguity. *Id.*, slip op. at 34.

In *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2266 (2024), the Supreme Court explained that "statutes, no matter how impenetrable, do—in fact, must—have a singly best meaning." Courts are directed to employ "the traditional tools of statutory construction . . . to resolve statutory ambiguities." *Id.* It is thus this Court's responsibility to derive clarity form the Durbin Amendment's ambiguity.

In doing so, the Court should rule for the Board of Governors. The best reading of the Durbin Amendment is that it allows the Board to consider costs not either specifically allowed or barred. To rule otherwise is to miss the importance of the grammar of relevant portions of the statute and to deny the Board a critical tool in its task to establish a debit interchange fee cap that is "reasonable and proportional to the costs incurred by" debit card issuers. 15 U.S.C. § 1693o-2(a)(3)(A).

Further, the Board's Regulation II interchange fee cap is at least not too high because the costs it considers do not include all relevant costs that could be considered in determining a fee cap that would be "reasonable and proportional to the cost incurred by the issuer with respect to the transaction." 15 U.S.C. § 1693o-2(a)(3)(A).

This Court should rule for Defendant-Appellant.

## ARGUMENT

**I. The Court Below Was Wrong and the District Court in *Linney's Pizza* Was Right: The Durbin Amendment Allows the Federal Reserve to Consider the Third Category of Costs.**

Two courts have recognized that the Durbin Amendment, 15 U.S.C. § 1693o-2, was poorly drafted. *Linney's Pizza,* No. 3:22-cv-00017-GFVT, slip op. at 14; *NACS v. Bd. of Governors of the Fed. Rsrv. Sys.*, 746 F.3d 474, 488 (D.C. Cir. 2014) ("*NACS II*"). However, following the Supreme Court's direction in *Loper Bright*, the court below and the district court in *Linney's Pizza* attempted "to determine the best

4

reading of the statute and resolve the ambiguity." *Loper Bright*, 144 S. Ct. at 2266. The preliminary interpretive question is whether the universe of costs the Board can consider when regulating the debit interchange fee consists solely of § 1693o-2(a)(4)(B)(i)'s incremental costs or whether the statute allows the Board to consider an implicit third category of costs. The court below incorrectly concluded that the Board could only consider the costs listed in § 1693o-2(a)(4)(B)(i).

The Board is directed to regulate debit interchange fees such that "[t]he amount of any interchange transaction fee that an issuer may receive or charge with respect to an electronic debit transaction shall be *reasonable and proportional* to the cost incurred by the issuer with respect to the transaction." § 1693o-2(a)(2) (emphasis added). The statutory language directs the Board, when crafting these regulations, to "distinguish between":

> (i) the incremental cost incurred by an issuer for the role of the issuer in the authorization, clearance, or settlement of a particular electronic debit transaction, which cost shall be considered under paragraph (2); and

> (ii) other costs incurred by an issuer which are not specific to a particular electronic debit transaction, which costs shall not be considered under paragraph (2).

5

§ 1693o-2(a)(4)(B).

First, "distinguish between" should not be read to mean that the two listed categories are a closed universe. The clause does not preclude the Board from considering non-incremental costs as "cost[s] incurred by the issuer with respect to the transaction" when setting the interchange fee cap. The distinction the Board is directed to make is between certain costs that are incurred in processing "a particular electronic debit transaction" and certain costs that "are not specific to a particular electronic debit transaction." § 1693o-2(a)(4)(B).

If Congress intended to create a bifurcated system excluding non-incremental costs from consideration, the statutory language would not need to spell out that those costs to be considered are "incremental cost[s] incurred by an issuer for the role of the issuer in the authorization, clearance." § 1693o-2(a)(4)(B)(i). It would only need to direct the Board to distinguish between the costs that are incurred by the issuer in processing a particular transaction and those that are not.

In fact, there would be no need for Congress to use the phrase "distinguish between." Instead, it could have simply told the Board that it was only allowed to consider "the incremental cost incurred by an issuer" in the processing "of a particular electronic debit transaction." Further, Congress would not have needed to direct the Board to set a "reasonable and proportional" fee cap because the Board

6

would have simply needed to calculate the costs incurred within the § 1693o-2(a)(4)(B)(i) and used the results to set the cap.

Second, § 1693o-2(a)(4)(B)(ii)'s phrase, "which are not specific to a particular electronic debit transaction," is much more naturally read as restrictive rather than descriptive. "[D]escriptive clauses explain, while restrictive clauses define." *Linney's Pizza*, No. 3:22-cv-00071, slip op.at 16 (internal quotation marks omitted) (quoting *NACS II*, 746 F.3d at 485). If the clause, "which are not specific to a particular electronic debit transaction," is descriptive, then it merely describes one example of the "other costs" § 1693o-2(a)(4)(B)(ii) prohibits the Board from considering. In reality, however, only the costs "which are not specific to a particular electronic debit transaction," are the costs that § 1693o-2(a)(4)(B)(ii) prohibits the board from considering.

The court below found that the language was inconclusive on this question but that is incorrect. No comma follows "issuer," so the phrase beginning with "which" naturally restricts the meaning of "other costs incurred by an issuer." The district court in this case had to simply pass over the question of whether § 1693o-2(a)(4)(B)(ii) contains a descriptive or restrictive clause, and admitted that "the Durbin Amendment's commas and articles are not reliable tools for chiseling away at the statute's meaning because Congress did not draft the statute with the attention to detail of a puritanical grammarian." *Corner Post, Inc.*, 1:21-cv-00095-DMT-CRH

7

at 24. However, as Justice Scalia and Bryan A. Garner noted, "No intelligent construction of a text can ignore its punctuation,"[5] or in this case, its lack of punctuation.

Thus, as recognized by the district court in *Linney's Pizza*, Corner Post's reading of the statutory language makes surplusage both of § 1693o-2(a)(4)(B)(ii)'s phrase, "which are not specific to a particular electronic debit transaction" and of § 1693o-2(a)(2)'s "reasonable and proportional" requirement. *Linney's Pizza*, No. 3:22-cv-00071, slip op. at 18. If the Board were prohibited from considering all "other costs," Congress would have no need to single out one type of those costs. Furthermore, the Board would not be required to weigh whether its fee cap is "reasonable and proportional" because the fee cap would be formulaically determined by calculating the costs the Board must consider under § 1693o-2(a)(4)(B)(i).

The best reading of the statute, then, is that the Board's consideration of other costs was permissible. Further, as shown in Section II, the Board's fee cap was, if anything too restrictive rather than, as Plaintiff-Appellee argues, too permissive.

---

[5] Antonin Scalia, Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 161 (2012).

8

Appellate Case: 25-3000    Page: 12    Date Filed: 12/30/2025 Entry ID: 5592374

## II. The Current Regulatory Cap on Interchange Fees is not in Excess of the "Reasonable and Proportional" Directive to the Board by Congress.

*A. The current cap already prevents fees from being greater than a level "reasonable and proportional to the cost incurred."*

The Durbin Amendment imposes a clear constraint on the Board: Interchange fees must be "reasonable and proportional to the cost incurred by the issuer with respect to the transaction." 15 U.S.C. § 1693o-2(a)(2).

Numerous core issuer costs are not even presently considered by the Board in its calculation of what qualifies as a "reasonable and proportional" fee. For instance, the Board excluded general company overhead, losses stemming from insufficient-funds transactions, and fraud-prevention activities unrelated to authorization despite the fact that these costs are indisputably incurred as part of debit-card processing.

Further, the Board's one-cent fraud prevention allowance per transaction bears increasingly little relationship to reality, failing to cover actual fraud-prevention costs for the majority of covered debit card issuers.[6]

---

[6] Federal Reserve Board, 2019 Interchange Fee Revenue, Covered Issuer Costs, and Covered Issuer and Merchant Fraud Losses Related to Debit Card Transactions (2021) https://www.federalreserve.gov/paymentsystems/files/debitfees_costs_2019.pdf.

9

Because the interchange-fee cap is not adjusted for inflation, the existing cap is actually nearly one-third lower in real terms than it was in 2011.[7] As a result, more than twenty percent of covered issuers incur average debit-card transaction costs that exceed the Board's own cap. The current cap on debit interchange fees is most certainly not higher than permitted by the Durbin Amendment's requirement that the Board's interchange fee cap be reasonable and proportional to actual costs incurred by issuers.[8]

B.  *Competitive market forces already maintain downward pressure on fees. Lowering the cap will harm consumers.*

Major networks compete for business from issuing banks. In addition, hundreds of independent sales organizations (ISOs) negotiate fees for small merchants, creating genuine competition. It is these competitive market forces which place downward pressure on the processing costs per dollar of transactions over time. An attempt to artificially lower fees will stifle innovation, result in increased

---

[7] U.S. Bureau of Labor Statistics, Consumer Price Index for All Urban Consumers: All Items in U.S. City Average [CPIAUCSL], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/CPIAUCSL, December 12, 2025.

[8] Federal Reserve Board, 2019 Interchange Fee Revenue, Covered Issuer Costs, and Covered Issuer and Merchant Fraud Losses Related to Debit Card Transactions (2021) https://www.federalreserve.gov/paymentsystems/files/debitfees_costs_2019.pdf.

10

cardholder fees, decrease the availability of debit card services, diminish rewards programs, reduce investment in fraud-prevention technology necessary to maintain secure payment networks, and disproportionately harm lower-income consumers through the loss of free checking. Lower caps would also further impair the ability of ISOs to service small merchants. Thousands of ISOs compete to deliver the lowest processing fees and highest customer service to millions of merchants. Smaller merchants prefer to work with these ISOs because of the high-quality customer service they receive. This customer service is high because the income of the ISOs is derived almost exclusively by a share of the processing fees.

Following the imposition of the initial debit card interchange fee caps in 2011, most big retailers pocketed the savings. Meanwhile, the price cap forced banks to recoup their revenue losses by adding fees and eliminating free checking for some lower-net-worth clients.

## CONCLUSION

For the foregoing reasons, this Court should rule for Defendant-Appellant.

Dated: December 22, 2025        Respectfully submitted,

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
Timothy Harper (Admitted in DC)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29 and 32 because this brief contains 2,335 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

This brief complies with the requirement of 8th Cir. R. 28A(h)(2) because it has been scanned for viruses and is virus-free.

Dated: December 22, 2025         Respectfully submitted,

<u>/s/ J. Marc Wheat</u>
J. MARC WHEAT
  *Counsel of Record*
Timothy Harper (Admitted in DC)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 22, 2025        Respectfully submitted,

/s/ J. Marc Wheat
J. MARC WHEAT
  *Counsel of Record*
Timothy Harper (Admitted in DC)
ADVANCING AMERICAN FREEDOM, INC.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 780-4848
MWheat@advancingamericanfreedom.com

*Counsel for Amici Curiae*